May it please the Court, my name is Gary Kasselman on behalf of two minor children of decedent Gilberto Gutierrez and his mother. I would like to reserve five minutes of my fifteen minutes for rebuttal. Please watch the clock. I will do so, thank you. Your Honor, this was an excessive and unreasonable shooting and the Court even said it was a bizarre set of facts. The decedent was in the emergency room handcuffed by his left wrist to a three hundred and fifty pound gurney with locked wheels. Defendants claim they shot him from the left side, which was the side presented to the shooter, as he reached toward, according to their testimony, the non-shooting deputy. He was unarmed and the shot came in from the opposite side in a top-down, right-to-left orientation. I'm here because I believe the errors in this trial, in this case, were many and prejudicial. If I didn't think so, I wouldn't be here. I'm not a regular in the Ninth Circuit. We're requesting judgment as a matter of law and or a new trial in the alternative. I'd like to quickly go through what I think are the major errors in outline form. The admission of post-mortem toxicology was unnecessary and unfair. The Court cited the Boyd case, which I will discuss later, but it was only dealt with regarding post-mortem toxicology in a very summary fashion. There was no weighing, no dub air, no 702. Well, did you make a motion for dub air hearing prior to trial? On that issue? Yes, we made a motion to exclude the post-mortem toxicology. We made a motion to exclude the defendant's toxicologist and in the alternative, a motion to designate a rebuttal expert. I because it seems like the results were not really in dispute. I agree. I agree. Did you raise that issue to us? In your opening brief, there isn't any discussion of dub or you mentioned I think it's Federal Rules of Evidence 104, but not 702. Then you raise it in the reply brief. Of course, the county didn't have an opportunity to respond. So is that before us? I believe the dub air citation was raised in the opening brief, Your Honor. If the Court wishes, I can cite to it, but we indicated that the Court did not have a weighing. In fact, the Court applied the improper standard. The Court made its own standard of absolute necessity for a rebuttal expert, which of course is an abuse of discretion. So wait, there's a lot of different issues going on. You're talking about the Spheeler testimony, right? Correct. So the district court had said it was not going to allow plaintiffs to put on the rebuttal expert, Mr. Schneider. Dr. Schneider, and he had said that in the motion eliminating, there's too many experts and you all can challenge Spheeler's views through cross-examination. So we're looking at that for an abuse of discretion. Why was that ruling erroneous? Well, first of all, the standard is under Rule 26 for designation of a rebuttal expert. When the Court announced on July 28, 2014, that there would not be any more experts, it had only been two weeks since Spheeler had been designated. No depositions had been taken. The Court continued the trial to allow these depositions to be taken. But the standard, and there was time under Rule 26, and the standard is very clear, to rebut or otherwise challenge the conclusions and opinions of another expert. So we were not allowed, and the Court had expressed some doubt whether it was going to even allow postmortem toxicology. We also had a treating doctor who examined the decedent while he was not a decedent and said that he did not show any evidence of drugs on board. Well, that was his personal observation in the emergency room. But toxicology is an entirely different matter, isn't it? Yes. And so therefore, it becomes relevant, right? Well, relevant, but it may be a 403 situation. It may be, but the judge weighed that and said, I'm going to allow it. Now, as regards the rebuttal expert, as a trial judge, I'm a little concerned. We oftentimes will exclude rebuttal witnesses and rebuttal experts saying, you can cover this on and once that begins to vary, and I think your trial counsel did a pretty good job of that, and the judge tried to even help out to clarify that in the minds. So how is that, that the judge abused his discretion by saying, I don't think rebuttal is necessary? Well, first of all, we initially had the right under Rule 26, 2D2, to designate a rebuttal expert and... Well, you can designate them, but that doesn't mean that they're necessarily entitled to testify. You default back to 701 through 704, don't you? And it's within the judge's discretion whether it would be helpful or not. Well, the discretion has to be a reasonable discretion. And in fact, as a... Why wasn't this reasonable? Do you disagree that you could have brought eight the same points through cross-examination? Was there something unique about Dr. Schneider's testimony? Yes. He was a medical doctor, a psychiatrist, an addictionologist. Ms. Spieler was basically a toxicologist and a pharmacologist. So her realm was related to explaining how the sample is taken, the significance of the sample, etc. But... And the court even said, and it's shown in a number of places in the court's order with regard to some of the experts, that no expert was to discuss behavior or what actually happened at the incident as a result of the expert's opinion. So Ms. Spieler, who was the subject of a number of decisions before this court, and had, I think, 11 months earlier in the case of Turner v. Kern, been cut off from expressing some of the same opinions that she expressed in the trial. Well, now, counsel, you know in trial times, experts love to go a far field, despite a judge's earlier ruling. It's up to counsel to rein them back. And the judge took an active role in reining her back also, and gave curative instructions. So how is that an abuse of discretion? Well, the judge did, as I recall, the judge didn't give a curative instruction as to the place where Ms. Spieler's testimony would lie. And frankly, the questions of counsel are not evidence and are no match for a credentialed expert in that area. I guess I hear what you're saying, but I tried to find a case which would suggest that this was an abuse of discretion. I have two. And well, frankly, did you look at Wong? I don't recall Wong. Wong v. Regents of the University of California is a case similar to what this case is, where the district judge had one schedule and then redid the schedule and said, I'm not having these experts in unless you meet four factors. And it didn't meet one of the factors, and so therefore, he didn't let the expert in. And it came before us and we said, no abuse of discretion. This is similar to Wong, it seems to me. May I respond? Sure, that's why I laid it out for you. Thank you. I appreciate that. And I did read the Wong case, and if I recall correctly, this was a case of wrongful termination. And well, I know what it is, but I'm trying to get at the evidence issue. Right. We're talking about evidence. Okay. Whether it's in the wrongful determination or whether it's in this case. It has to do with evidence and whether the district court abused his discretion. I got it. Thank you. Four factors, and your honor indicated that there were four factors, weighed, considered, and a determination made upon those factors. In the instant case, there were no such weighing, there's no record of any such weighing. Oh, but just a minute. There was one deadline imposed, and then the court came to this part and he made a new deadline. And the new deadline was, said, the court ordered no further experts would be allowed without first demonstrating the testimony of the new expert is absolutely necessary to provide the jury with an informed and balanced view of the facts. And he, therefore, was given, he had one order that was different, but now he comes up with a new order. That, like Wong. Wong had one order, the district judge has set one order in his order, and then he comes up with a new order putting four factors. And we said, listen, the district judge has to control their caseload. They know what they've got in front of them, and they understand what the situation is which relates to experts, especially experts in this kind of a proceeding as a rebuttal. And so, therefore, it's not an abuse of discretion. I may not have done it, but it's not an abuse of discretion. That's what Wong says. So then I try to apply it to this situation. When I say to myself, well, you already had experts to testify the decedent did not show any indication of being on drugs. You had good cross-examination. So I guess I don't know why there's an abuse. And again, abuse of discretion. Of course. Well, first of all, Your Honor, there was no weighing, no factors. What do you mean no weighing? By the court. He had to determine whether it was absolutely necessary to provide the jury with an informed and balanced view of the facts. That was his order. And frankly, the district court said, hey, you already got experts to testify about this, and you can do some good cross-exam, and we're on rebuttal. Let's get on with it. Your Honor, the fact is that in an abuse of discretion case, and I read the Hinkson case, and my understanding is that first you identify the standard to be applied. The standard here that was applied by the court was absolute necessity. The statutory standard. Not absolute necessity at all. I just read you what he said. He said in July. It's absolutely necessary. But what to do? To provide the jury with an informed and balanced view. Then he said, you got some experts counsel that are going to come in and say that there wasn't any indication of being influenced on drugs. You got good cross-examination, and frankly, I read the cross-examination to see if there was good cross. I thought it was pretty good. And so I said to myself, you know, I don't know why this judge abused discretion. Now, I may not have done it, but that's not my role. And having been on the district court, I don't like a circuit court coming in and doing something on me unless I abuse my discretion. Well, with regard to the record made, the only record made by the court was that it was absolute necessity rather than the statutory right to make Maybe you should move to another issue because I think we have your argument in mind. All right. But let's get back to the Daubert question. So let's assume that that's properly before us and not waived. The district court didn't give its reasons for allowing Spieler to continue in light of your objections. If that was an error, can you explain why that was prejudicial? Yes. The issue of postmortem toxicology came in virtually unrebutted because Spieler was unable, pardon me, there was nobody to testify with authority that her assumptions, her conclusions were incorrect. But in the context of the case, how much difference does that make? There was a lot of evidence. The opposing counsel says there's plenty of evidence supporting their theory of the case that the person jumped off the bed, that he was attempting to reach for the gun, and they presented blood spatter evidence and a range of other evidence as well. So how important was it whether he had meth in his system or not or how that affected him? The judge at the pretrial conference said this was a very close case. And then the issue of drugs and Spieler testifying that it was a toxic and abusive level. She even suggested maybe the guy was trying to commit suicide. And she went beyond even what the court allowed her. We made objections which were overruled. Then the court invited an objection and sustained it. But now we're post-trial. So what the district court speculated pretrial about how close the case was, we now have the whole trial record. That's the post-trial. Well, that's what the court said. But the court also said in the post-trial motion of August 18 that there was no geometry or physics that would justify the shooting. It was uncontradicted that the shot was taken from the left. Okay, I've taken you over your time. But I'll give you a minute for rebuttal. Thank you. I'd reserve five minutes, Your Honor. Right, but you used the time up because of our questioning. But we will give you a minute for rebuttal. Thank you. May I proceed, Your Honors? May it please the court. Your Honor, the record below confirms that there was more than substantial evidence to support the jury's verdict in this highly contested case. I mean, just running down the percipient testimony and without delving into the realm of expert evidence, we have the following. We know that Mr. Gutierrez was arrested for possession of methamphetamine. We know that he collapsed at the station after he had been booked following what appeared to have been seizures. We know that he was then transported to the hospital by Deputy Chavez and Deputy Swanson. We know that Mr. Gutierrez informed medical staff that he had recently come off of methamphetamine and that he was experiencing a high state of anxiety and panic attacks. We know that he was subdued and lethargic while he was at the hospital as noted by medical staff through numerous witnesses. We know that he refused medical treatment. We know that his handcuff, his right handcuff, was removed. We know that Deputy Swanson moved to raise the hospital gurney. Okay, so we're aware of the facts of the case. Why was it that the district court didn't, or in failing to have a Daubert hearing on Spieler's testimony, given that the Plaintiff's Council requested that in their motion? And our case law says a court has an obligation to give such a hearing on request. There was no error because Dr. Spieler did not testify with respect to applying the scientific principles as to which she testified. She did not apply them to the specific facts of the case and draw conclusions. I thought she said that Gutierrez was probably on the low end of the B curve or something along those lines indicating that, indicating what sorts of characteristics would affect Gutierrez in those circumstances. That is correct, Your Honor, but I think it's important to note that she did not specify any particular characteristics for the jury. What she did is she established the range of possible characteristics that could be exhibited given the undisputed level of metabolites in his system and she presented that to the jury, but she was not permitted to testify with respect to any particular symptoms or effects that he might be experiencing at that moment. And therefore, Daubert was not required for her to establish what methodology she would employ to say that Mr. Gutierrez at this moment in time was experiencing this particular effect. Judge Wilson was very mindful and very emphatic that that conclusion would be drawn only by the jury, that no one would be permitted to testify otherwise, and that's precisely what happened. Judge Wilson, in fact, cut off, sustained an objection where Dr. Spieler would have delved beyond testifying simply to the range of potential effects that might be experienced. Judge Wilson did not permit that and the record clearly reflects that. So with respect to allegations of error, what's evident is that Judge Wilson was mindful of the plaintiff's concerns and sustained an objection on that basis. And that was consistent throughout the expert testimony in this trial. Judge Wilson steadfastly refused to allow any expert to draw conclusions as to what happened in this particular case.  And that is repeated throughout the record below, Your Honor. So with respect to that allegation of error, I don't, if there was any error, I believe that it was harmless, Your Honor. I don't see anything that is necessary in Dr. Spieler's testimony that the jury could not have drawn from the percipient facts. And I apologize for launching into my laundry list, but what I was focusing on is the testimony, the percipient testimony that was uncontradicted, that methamphetamine was at issue, that he had exhibited symptoms, not as testified to by an expert, but as observed by percipient witnesses and reported to the percipients in this situation. That evidence was in the record. And the jury was able to consider that. And it did. And, Your Honors, I don't want to spend too much time on this, but I think if we step back just for a moment and we look at the two theories that were presented to the jury, they're very starkly divergent theories. I mean, one is along the lines that I've begun to explain, which is that these two deputies were transporting this man for medical care, that there was an unexpected incident that they were not prepared for, that they dealt with that as best they could, that they employed escalating force in an attempt to stop this incident from reaching a fatal conclusion, but that they were unsuccessful in doing so. That evidence is completely consistent with the evidence at the scene and with the defendant's theory of the case. In contrast, as characterized by Judge Wilson, if we are to accept plaintiff's version of events, we have to conclude that this was a, quote, unquote, a fascist act, an unprovoked murder, if you will, of an unresisting suspect. And frankly, the theory just doesn't make sense when we consider the circumstances. The deputies and Mr. Gutierrez are in what appears to be a busy hospital, despite the fact that it's one in the morning. In the video, we have numerous staff coming in and out, going to and fro. Well, there is the fact that Mr. Gutierrez was handcuffed to this gurney, which reportedly was not movable, was very heavy. And so obviously, once they had released his fingers from the gun, the two officers could have just backed away. He wasn't going, the victim wasn't going anywhere. And that's an argument that was made below. In fact, in their 50A motion, plaintiffs argued that the deputies' failure to stop any contact after Mr. Gutierrez leapt from the gurney, that that was a moment at which they should have stopped. I think what that argument ignores is the extreme rapidity, the fluid and chaotic nature of this encounter. The testimony is that as soon as Mr. Gutierrez leapt from the gurney, Deputy Chavez at that point felt that he had no choice other than to employ the deadly force of drawing his service weapon and firing. Baton strikes hadn't worked. And as it's described, this happens in an instant. Mr. Gutierrez leaps from the gurney, and he immediately lunges towards Deputy Swanson. We're talking about split seconds. We're talking about judgments made under extreme duress and stress. So I understand that the plaintiffs made the argument below. I acknowledge that. But I also understand why the district court rejected it and left the decision up to the jury, which did not agree with that version of events. They, based upon conflicting arguments, they made their decision that the deputies were justified in the acts that they took. Let me take this a little bit differently. It was of some interest to me that the district court got involved in the questioning here and the summing up of what was said and what was not said. I mean, as a district court judge, I'll be fair. I felt like where this district court went was out of counter. And the NG complains that the district court improperly introduced the rotated head theory, and also that the court's summary of Dr. Nguyen's testimony was improper. Well, I mean, to be fair, this judge did a lot of questioning. And how can one say that NG is incorrect? Your Honor, I do believe it's fair to acknowledge . . . I mean, coming from the situation where the judge is supposed to be the impartial, is supposed to make sure everything is fair, and then the judge gets involved in the questioning. Talk about jury questioning being a problem. Some people think it's okay. But the bottom line is, here's the judge involved. And he, well, did he introduce the rotated head theory? No. Actually, Your Honor, Dr. Nguyen is the first person in the trial to use the term. But Dr. Nguyen did that, but he only did that when he was questioned by the judge. I understand that, Your Honor. And one thing that I think it's important to note with respect to Judge Wilson's questioning is that it was directed at witnesses for both He questioned witnesses from both sides. He clarified testimony from both sides. But what I believe he did rather scrupulously on each occasion that he did so was to admonish the jury that neither his questions nor his comments were intended to suggest any view of the evidence or any view that the jury should have. And he reminded them on each occasion that the jury was to reach its own decision based on its independent review of the testimony and evidence before it. And that is throughout the record. So while Judge Wilson was certainly active from the bench, he did so even-handedly. And he did so in a responsible fashion that reminded the jury of the limits of his ability to question or comment. Do you look at his questions as within bounds or, let's say, out of bounds as may have been suggested? Was he trying to clarify the issues for the jury so it's understandable what the differing positions were? What was it? That is my impression from review of the record, Your Honor. Yes, that's precisely what he was attempting to do. As I've noted, the theories presented at trial were quite starkly divergent. And in fact, even the characterization of Deputy Chavez and Deputy Swanson's deposition testimony and their assumption of stances or statements was very highly disputed and highly contested. And my impression is that Judge Wilson wanted to ensure that the jury understood the source of these arguments, that the jury was able to view the testimony clearly and solely from the witnesses. And I think when we review the expert testimony, we again find that it confirms that there was substantial evidence to support what the jury did and that the jury arrived at its decision independently.  This testimony simply demonstrates that it's possible for a person who's handcuffed to a hospital gurney to leap from the gurney and to wind up on the floor. That was disputed by the plaintiffs. They contended this was impossible, that Mr. Gutierrez must have been shot while he was lying down in the bed because he could not have gotten out of that gurney. This was important and an unadulterated testimony that was subject to no commentary that showed the jury that the theory presented by the defense, in fact, that the testimony presented by the defendants was plausible. It was not beyond the realm of possibility. What they described was within the realm of what could have happened, what the jury could consider. We've been through Dr. Spieler quite extensively, of course, but when we turn to Mr. Delhauer, and he provides some very simple testimony which does have a rather large and substantial pool of blood surrounding the position where Mr. Gutierrez came to rest, that it indicates that he is close to the position where he received the gunshot wound to his head, that it did not happen in the gurney. We don't have to talk about spatter analysis or anything else. This is a very simple presentation of fact regarding simply the location of the large pool of blood and the absence of any such pool of blood on the gurney. So again, we have very simple straightforward evidence that's being presented to the jury that's not subject to being spun. And again, when we turn back to Dr. Lewin, in their post-trial motions, the plaintiffs submitted a declaration which stated that before his testimony, Dr. Lewin had informed plaintiff's counsel that he was intimidated by him, that he was frightened of plaintiff's counsel. And the court itself acknowledged that Dr. Lewin's speech was somewhat hard to understand, that it could be hard to follow his syntax and his experience. Judge Wilson undertook efforts to ensure that the jury was able to understand Dr. Lewin's testimony. And I believe he did so in a fair and balanced fashion, Your Honors. And my time is nearly up, so unless the panel has any particular questions for me, that's all I have. Apparently not. Thank you. Thank you. Well, I have to talk fast. First of all, there was no evidence in the record, no fact evidence, that the incident could have happened the way that the deputies said. They tried to say that it wasn't a proper demonstration, but they were asked questions in their deposition. They were asked questions by the court. The court even had to nail down Chavez and say, you were on the left. And finally, he conceded that. The court even says that the geometry and physics in its order did not explain the shooting. The man was shot on the right side of the head on the top, and he was shot from the left, according to the defense. Just a minute. That's a great argument, but I thought when challenged with the your experts said, yes, this version was possible. No, what happened is that, first of all, the court's hypothetical was the basis for that, but there was no factual evidence. But as counsel suggests, the judge wasn't just questioning on his side. The judge questioned on your side, too, as you're giving me ample indication. The court said this. The court said that. The court made the detective finally come to the party. So all I'm saying is, when I look at what your experts said, that the version was possible, that's what they said. Then I worry about what you're just about to tell me. Well, my brother used to say, if pigs had wings, they'd fly. The fact is that if you line up the Styrofoam head showing the wound with the muzzle of the gun, sure, it will line up. Obviously, when the man was shot, the gun was lined up, but that wasn't the way the deputies testified. Did the experts say that the version was possible? No, not on these facts. Now, just a minute. I'll be fair. I read the record pretty carefully, and you're saying that your expert never said that the deputies' version was possible? Well, no, he didn't. As I recall, he didn't say that. In fact— And if he did say that, then what happens with the fact that there's no evidence to sustain what the detectives suggested? Well, he was a deputy, but the record shows that the shooting was from the left, the shot came in from the right, speculating that if things were different, that the result might be different. But we don't know. I mean, I thought the issue was we don't know exactly how Mr. Chavez at his depot had a picture taken of himself trying to recreate that position is not the same as the facts of how Mr. Gutierrez was positioned. And Mr. Chavez, as you know, the things were moving fast, he could have—he was moving—Gutierrez was moving fast. So I think if you're premising this on Mr. Chavez's picture at his depot, that seems like a pretty weak link. Not just his depot, but his photograph was taken. He said he was reaching toward Swanson. Swanson said he was reaching toward him. Those are exhibits 24A, 26B, 26C, and then we have exhibit 32, which is Swanson, and then 36C and D show the wound track. So there was no way, based on what the deputies testified, for this to have occurred. Well, wait a minute. I thought part of his deposition was that he was asked a certain question, he testified one way, and at trial he testified somewhat differently, and when they asked, he said, the lawyer never asked me that question. He didn't ask it to me that way, and I find in court a lot of times, people want to impeach with a deposition, but the questions are not the same, and they're dissimilar in many respects, and it really doesn't impeach them. And if it did impeach them with his prior deposition, wasn't that a question of fact the juries had to sort out? Isn't that—isn't that just typical direct and cross-examination? The court said that the testimony could support the shooting. However, there was no testimony, fact testimony, by the defendants. They were the only percipient witnesses of the head that could have been rotated. It would have been anatomically impossible, virtually, if not exactly, to receive that based on their explanation. I also want to just quickly touch on the point that I didn't make, which is— Well over, so just wrap up very quickly, okay? Right. It's our contention that the standard for abuse of discretion was abdicated by the court. There was no record made with regard to Spieler, no record made with regard to disallowing Dr. Schneider. The misconduct of counsel put a diagram in front of the jury, which showed the scene going at the shooter with a line. Defendants, I think, are disingenuous when they say, well, that's to show—or the court, that's blood splatter. There wasn't anything about blood splatter. It's a man going at a person with a shooter and a line. In any event, it's our contention that there was no support for the verdict. Judgment as a matter of law should have been granted, or at the very least, for the grounds stated, a new trial should be granted for abuse of discretion. Thank you very much. I appreciate the time. Thank you for your argument. The case of NG v. County of Los Angeles is submitted.
judges: Ikuta, N.R. Smith, McNamee